### In re LEVY et al.

### LEVY et al. v. MAHONING NAT. BANK et al.

(Circuit Court of Appeals, Sixth Circuit. January 6, 1927.)

#### No. 4629.

1. **Bankruptcy** ⟨⟩413(4)—**Objection to bankrupt's discharge need not specifically allege concealment of assets was knowing and fraudulent** (Bankruptcy Act, § 14b, subd. 4 [Comp. St. § 9598]).

Objection to discharge in bankruptcy under Bankruptcy Act, § 14b, subd. 4 (Comp. St. § 9598), because of concealment of property with intent to hinder, delay, and defraud creditors, need not allege that property was knowingly and fraudulently concealed; it being sufficient to allege that the bankrupts committed the act "with intent to hinder, delay, or defraud creditors."

2. **Bankruptcy** ⟨⟩414(3)—**Fraudulent concealment of leasehold estate to hinder, delay, and defraud creditors held proved, precluding bankrupt's discharge** (Bankruptcy Act, § 14b, subd. 4 [Comp. St. § 9598]).

Evidence *held* sufficient to warrant finding that bankrupt fraudulently attempted to conceal leasehold estate with intent to hinder, delay, and defraud creditors, within Bankruptcy Act, § 14b, subd. 4 (Comp. St. § 9598), thereby precluding his discharge.

Appeals from the District Court of the United States for the Eastern Division of the Northern District of Ohio; Paul Jones, Judge.

In the matter of Gabriel Levy and others, individually and as partners trading under the firm name of Levy Bros. & Harris, the Wilson Clothing Company, and MacAdams, bankrupts. From an order denying individual bankrupts a discharge in bankruptcy, opposed by the Mahoning National Bank and others, said bankrupts appeal. Affirmed.

Chas. I. Russo, of Cleveland, Ohio, for appellants.

Chas. F. Smith, of Youngstown, Ohio (Harrington, De Ford, Huxley & Smith and McKain & Ohl, all of Youngstown, Ohio, on the brief), for appellees.

Before DENISON, MOORMAN, and KNAPPEN, Circuit Judges.

MOORMAN, Circuit Judge. This is an appeal from an order denying a discharge in bankruptcy. There were three specifications in objection to the discharge. We find it necessary to consider only the third, which alleged "that on or about the 17th day of January, 1923, and within four months immediately preceding the filing of the said petition, said bankrupts transferred and thereafter concealed from the trustee a portion of their property, consisting of a leasehold estate on the property known, for street numbering purposes, as 15 East Federal street, in the city of Youngstown, Ohio, with intent to hinder, delay, and defraud creditors, said leasehold estate being, after said transfer, held in secret trust by said William Morrison for these bankrupts."

[1] The specification was based on subdivision 4 of section 14b of the Bankruptcy Act (Comp. St. § 9598), which denies a discharge if the bankrupt has "at any time subsequent to the first day of the four months immediately preceding the filing of the petition transferred, removed, destroyed, or concealed any of his property with intent to hinder, delay, or defraud his creditors." Under this ground of objection it was not necessary to allege that the property was knowingly and fraudulently concealed, it being sufficient to allege, in the language of the statute, that the bankrupts committed the act "with intent to hinder, delay, or defraud" their creditors.

[2] The facts as to the lease are: William Adams, the owner of the property, on April 23, 1913, leased it to the Pabst Brewing Company for twenty years, commencing April 1, 1913, at a rental of $4,800 a year for 5 years and $5,000 a year for the remainder of the term. On June 24, 1919, the Brewing Company transferred the lease to appellants for a consideration of $13,500. On January 16, 1923, they sold the lease to William Morrison for $4,000, and the same day he sublet the property to them for a term of 5 years at an annual rental of $6,200. This sublease contained a clause vitiating it if the lessees became bankrupt. They were adjudged bankrupts February 16, 1923. Thereafter Morrison organized a realty company, of which he was the sole owner, to which he

assigned the lease. On December 12, 1923, that company sublet the property to Arthur Crowe for 5 years at an annual rental of $9,600 for the first year and $10,800 for the remaining 4 years. It thus appears that the bankrupts paid $13,500 for the lease, sold it to Morrison for $4,000, immediately agreed to pay him $1,200 a year rental for 5 years in excess of the lease rental, and that Morrison leased the property to Crowe for 5 years for a sum approximating $28,000 in excess of the original rental, having left about 4 years of the original term.

Appellants were merchants. They claim to have lost about $100,000 during the 12 months preceding their bankruptcy. For several months immediately preceding it they were engaged almost continuously in putting on special sales of merchandise. They were also engaged in buying goods, much of which they sold without regard to cost prices. Theretofore they had discounted their bills, but beginning with their new method of selling they ceased to take discounts or to pay any substantial part of their indebtedness. They do not account for the large sums that they received from these special sales. It was not possible to ascertain from their books the cause of their failure, or to determine, as of a given time in the preceding year, their financial condition. It is true that what Morrison paid them was applied to a debt which they owed the bank. That debt, however, was not then due, and no demand had been made for it. The bank had demanded of them a financial statement, but such a statement was not furnished, though the bank officials had insisted on having it.

Morrison was an attorney, 29 years old, engaged in the practice of law in Cleveland. He did not know any of appellants, but Gabriel Levy. It does not appear that he was engaged in the real estate business or that he ever purchased any other lease. He said he was not intimate with Gabriel Levy; that "we knew each other, would speak to each other, whenever we would see each other, that is all." He had never had any business relation with Levy. When they first met, Levy was in the clothing business in Cleveland. Morrison knew him by "seeing him quite often and talking with him upon the street." Levy went to Youngstown in 1912. Morrison said he had known Levy since "1914 or 1915," that he never saw Levy, after he went to Youngstown, until they met on the street by the building in which Morrison had offices. Levy being in need of funds, claims to have gone to Cleveland to see Morrison—why in that situation and in view of their casual

acquaintance does not appear. At the first meeting, which seemed to be accidental, there was a discussion of the lease. Morrison said that a few days later he went to Youngstown, looked at the property, noticed some vacant buildings on that street, called by telephone the persons having them for rent to ascertain their rental value, and then decided to take the lease. He did not recall the name of any one of whom he inquired. His testimony does not indicate that he required as a condition of the purchase the re-renting of the property by appellants for the period of five years at an increased rental; it does not show that he was familiar with rental values at Youngstown, or knew whether there was a demand for property of that kind.

The question is one of inference from the admitted facts as opposed to the testimony of the parties, both of whom said that the transfer was made in good faith. Undoubtedly the lease was worth much more than $4,000. It is equally certain that when it was transferred appellants knew that bankruptcy was impending. The District Judge thought that the transfer was made with intent to defraud creditors. We are constrained to the same view; that is, that it was a fraudulent attempt to conceal the lease, with a view on the part of appellants of repossessing themselves of it when the bankruptcy proceedings were over.

The judgment is affirmed.